FILED

Oct 31  9 51 AM '03

U.S. DISTRICT COURT
NEW HAVEN, CONN.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **RICHARD GORDON**<br>**Plaintiff** | : | NO: 3:01cv1656(MRK) |
| | : | |
| v. | | |
| **COMMISSION ON HUMAN RIGHTS AND**<br>**OPPORTUNITIES, ET AL.** | : | |
| **Defendants** | : | OCTOBER 30, 2003 |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

**I.   FACTS AND BACKGROUND**

The above-captioned action is a civil rights case brought by a former employee of the State of Connecticut. The Defendants filed a Motion to Dismiss dated August 18, 2003, asserting the following:

1. As to Count I, lack of subject matter jurisdiction due to failure to obtain a right to sue letter from the United States Department of Justice;

2. As to Count III, that a state agency is not a "person" amenable to suit under 42 U.S.C. § 1983, and the 11th Amendment bars claims under 42 U.S.C. § 1981 against the agency and against Pamela Libby in her official capacity;

3. As to Counts II, III and IV, that the 11th Amendment bars monetary damages against individual state actors in their official capacities;

4. As to Counts II, III and IV, that 42 U.S.C. § 1983 is the exclusive remedy for violations of the Equal Protection Clause by state actors; and

5. As to Counts II and IV, that Title VII is the exclusive remedy for retaliation for the exercise of various civil rights, barring a cause of action under 42 U.S.C. § 1983.

The Defendants seek dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), without specifying what Counts of the Amended Complaint should be dismissed under what provision of Rule 12(b).

Plaintiff concedes and withdraws his claims pursuant to 42 U.S.C. § 1983 against the Department of Administrative Services (only) in Count III.

## II.   LAW AND ARGUMENT

### A.   STANDARD OF REVIEW

"[T]he function of the Motion to Dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984), quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980). In deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996); Staron v. McDonald's Corp., 51 F.3d 353, 355 (2d Cir. 1995). Thus, dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) should be granted only if 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' Hishon v. Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Annis v. County of Westchester, 36 F.3d 251, 253 (2d Cir.1994). The Motion to Dismiss must be decided solely on the facts alleged. Goldman v. Belden, 754 F.2d 1059, 1065 (2d Cir. 1985).

To obtain a dismissal under Fed. R. Civ. Pro. 12(b)(1), for lack of subject matter jurisdiction, the Defendants must show that Plaintiff's claims are "made solely for the purpose of obtaining jurisdiction," or are "wholly insubstantial and frivolous." Bell v. Hood, 327 U.S. 678, 682-83 (1946).

### B.   AS TO COUNT I, AGAINST CCHRO, NO RIGHT TO LETTER FROM USDOJ IS NEEDED OR AVAILABLE, BECAUSE EEOC ISSUED A "NO REASONABLE CAUSE" DISMISSAL OF THE CHARGE.

The State's Motion to Dismiss Count I is entirely unfounded. Where the EEOC finds, as it did here, that there is no reasonable cause to proceed or dismisses Charge, no Right to Letter is sought or needed from USDOJ. See 29 C.F.R. § 1601.28(d). Failure to plead this does not warrant dismissal.

It is inexcusable that neither the State Attorney General nor his clients who are the state's human rights investigatory agency and its top officials, who operate the agency pursuant to a charge investigation Sharing Agreement with and on behalf of EEOC, and are themselves as a government employer subject to the "right to sue" provision they assert against the Plaintiff here, would not know, or even endeavor to verify what those rules are prior to filing a Motion to Dismiss in federal court accusing Plaintiff of noncompliance. The Plaintiff is entitled to reasonable attorney's fee and costs of having to respond to this baseless claim.

### C.   AS TO COUNT III, DEFENDANT PAMELA LIBBY IS AMENABLE TO SUIT UNDER 42 U.S.C. § 1981 AND 1983.

Libby does not enjoy immunity from these claims under the 11th Amendment. "Under Ex parte Young, 209 U.S. 123 [28 S. Ct. 441, 52 L. Ed. 714] (1908), there is a limited exception

3

to the general principle of sovereign immunity [that] allows a suit for injunctive relief challenging the constitutionality of a state official's actions in enforcing state law under the theory that such a suit is not one against the State, and therefore not barred by the Eleventh Amendment." Ford v. Reynolds, ___ F.3d ___ (2d Cir. 2003), citing CSX Transp. v. N.Y. State Office of Real Prop. Servs., 306 F.3d 87, 98 (2d Cir. 2002) (internal citations and quotation marks omitted). See Verizon Maryland, Inc. v. Public Service Commission of Maryland, 122 S. Ct. 1753 (2002) (private right of action exists for injunctive relief under Ex parte Young); Board of Trustees of the University of Alabama v. Garrett, 121 S. Ct. 955, 968, n. 9 (2001).

Among other relief, Plaintiff here seeks injunctive relief, i.e., "restoration" or reinstatement of his employment status. Even if the claim is directly against the state, the fact that the requested relief may result in expenditures of state funds does not necessarily create an 11th Amendment bar; "[b]ecause the main question is whether the relief will remedy an ongoing wrong rather than whether it will require payment of state funds, courts may grant prospective relief with 'a substantial ancillary effect on a state treasury.'" Lewis v. New Mexico Department of Health, 261 F.3d 970, 976 (10th Cir. 2001) (no 11th Amendment bar to § 1983 claims against state), quoting ANR Pipeline Co. v. Lafaver, 150 F.3d 1178, 1189 (10th Cir. 1998). Plaintiff also seeks front pay and future possible investment earnings, which still does not qualify as a purely retrospective monetary claim implicating the 11th Amendment. See Elephant Butte Irrigation Dist. v. Dep't of the Interior, 160 F.3d 602, 610 (10th Cir. 1998) (11th Amendment does not bar suit against state officials claiming violations of federal law in retention of profits under a land lease, where the claimed loss was *future possible earnings*). Any technical pleading ambiguities are

4

not grounds for the harshest sanction of dismissal, when they can easily be resolved through amendment of the complaint.

In determining whether Ex parte Young applies, courts may not look to the merits of the claim, rather, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective'." Verizon Maryland, 122 S. Ct. at 1760. Because 11th Amendment immunity and the Ex parte Young doctrine are jurisdictional, dismissal would have to proceed under Fed. R. Civ. Pro. 12(b)(1), for lack of subject matter jurisdiction, with the more demanding standard for dismissal of Plaintiff's claims being "made solely for the purpose of obtaining jurisdiction," or "wholly insubstantial and frivolous":

> At the immunity stage [of the dismissal inquiry] ... federal courts apply the limited jurisdictional standard used to assess whether a claim sufficiently confers subject matter jurisdiction, asking only whether the claim is "wholly insubstantial and frivolous," rather than reaching the legal merits of the claim. ... In addressing the Ex parte Young scenario in which defendant state officials acted beyond their authority in violation of federal law, the Court has used the familiar language of Bell v. Hood, 327 U.S. 678, 682-83 (1946), recognizing a separate jurisdictional standard that requires dismissal only when the claim is "'made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous.'" Larson v. Domestic & Foreign Commerce Corp., 337 U.S. [682 (1949)] at 690 n. 10. In addition, we have also held that once the issue of Eleventh Amendment immunity is raised "such immunity constitutes a bar to the exercise of federal subject matter jurisdiction." Fent v. Ok. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis added). Consequently, as a kind of exception to Eleventh Amendment immunity, the Ex parte Young doctrine is jurisdictional as well. The Ex parte Young doctrine is therefore governed by precedent that clearly distinguishes the initial jurisdictional inquiry from the 12(b)(6) inquiry. The threshold necessary to sustain jurisdiction is well settled: "Jurisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover ...." Bell, 327 U.S. at 682; see also Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction ....").

>Furthermore, our circuit, as well as the Supreme Court, has exercised jurisdiction in cases with similar issues. For example, we have held that "[i]f the applicability of the federal statute upon which a plaintiff relies is genuinely at issue, the federal courts possess jurisdiction and should reach the merits of the claim." Davoll v. Webb, 194 F.3d 1116, 1129 (10th Cir. 1999); see also Steel Co., 523 U.S. at 89 ("[T]he district court has jurisdiction if the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another . . . .") ... Simply stated, Rule 12(b)(6) and the Ex parte Young doctrine are two distinct inquiries requiring the application of different standards.

Lewis v. New Mexico Department of Health, supra.

The State here makes no showing that Plaintiff's claims are "made solely for the purpose of obtaining jurisdiction" or are "wholly insubstantial and frivolous." Id. Accepting all well-pleaded allegations as true and drawing all reasonable inferences in favor of the Plaintiff, because his Amended Complaint alleges violations by the individual state actors in their official capacities continuing into the future, i.e., the continuing discriminatory denial of gainful employment and defamation, and seeks prospective, injunctive and declaratory relief under this and other counts, the Eleventh Amendment does not bar all his claims in Count III, and the claims therein are not subject to dismissal for either failure to state a claim (12(b)(6)) or lack of subject matter jurisdiction (12(b)(1)).

Second, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981 applies broadly to anyone, including a State, who impairs contract rights on the basis of race:

>In Patterson v. McLean Credit Union, 491 U.S. 164 (1989), although the Supreme Court recognized that § 1981 "'prohibits racial discrimination in the making and enforcement of private contracts,'" id. at 171 (quoting Runyon [v. McCrary] 427 U.S. [160] at 168), it rejected the claim that § 1981 also applied to "conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions," id. at 177. ... Congress passed the Civil Rights Act of

6

1991 in response to Patterson. See H.R. Rep. No. 102-40(II), at 2 (1991), reprinted in 1991 U.S.C.C.A.N. 694, 694-95 ("The Act overrules the Supreme Court's 1989 decision in Patterson . . . By restoring the broad scope of Section 1981, Congress will ensure that all Americans may not be harassed, fired or otherwise discriminated against in contracts because of their race."). The 1991 Act amended § 1981 by adding two additional provisions to the statute, and by designating the preexisting provision as § 1981(a). Section 1981(b), the provision relevant to this case, states: For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C. § 1981(b) (emphasis added). The amended § 1981 thus covers claims of discriminatory termination.

Lauture v. IBM, ___ F.3d ___ (2d Cir. 2003) (§ 1981 protection against discrimination in contract rights broad enough to encompass even at-will employees denied continued employment expectation).

Cogent constitutional underpinnings militate against the proposed extension of the 11th Amendment. To wit, sovereign immunity was judicially created. See discussion, Vanderpool v. State, 672 P.2d 1153 (Okla. 1983); Scalia, "Historical Anomalies In Administrative Law," Yearbook 1985, Supreme Court Historical Society. It burdens the common law right embodied in the Magna Carta (Art. 61) to petition for redress of grievances; contravenes the Anglo-American jurisprudential precept that the government has duty to provide a forum for the peaceful resolution of disputes; and burdens the First Amendment right to petition for redress of grievances. So strong were the founders' orientations against sovereign immunity, that they abolished common law versions of it. See e.g., U.S. Const., Art. I, §§ 9, 10 (abolishing nobility). Finally, because Article III on its face is unambiguous in conferring jurisdiction upon federal courts for disputes between citizens and states, no rule of construction may be applied to alter its meaning.

7

Indeed, the Supreme Court has tread lightly in the area of expansion of 11th Amendment immunity. In <u>Idaho v. Coeur d'Alene Tribe</u>, 521 U.S. 261, 117 S. Ct. 2028, 2043 (1997), the Court found immunity, but only under the peculiarly compelling circumstances of the Tribe's requested relief of divesting the State of Idaho of all authority and ownership over an extensive amount of land, which the Court found was the "functional equivalent of a quiet title action" directly implicating "special sovereign interests." <u>Id</u>. at 281-82. "However, it is more difficult to say whether the Court intended its ruling to extend to every situation where a state property interest is at issue." <u>Elephant Butte Irrigation Dist.</u>,[1] <u>supra</u> ("We believe the holding of <u>Coeur d'Alene Tribe</u> does not extend that far, but instead reflects the extreme and unusual case in which, although the doctrine of <u>Ex parte Young</u> under traditional principles is applicable, the suit is prohibited because it involves "particular and special circumstances," <u>id</u>. at 2043, that affect "special sovereignty interests" and cause "offense to [the state's] sovereign authority," <u>id</u>. at 2040.").

Here, the State has provided with no compelling reason for this Court to enlarge the scope and effect of the 11th Amendment to bar the Plaintiffs' claims against Pamela Libby in Count III of the Amended Complaint, or any basis for a finding that Plaintiff's claims are "made solely for the purpose of obtaining jurisdiction" or are "wholly insubstantial and frivolous." Therefore, the Motion to Dismiss the claims against Libby in Count III must be denied.

---

[1] <u>See</u>, <u>Id</u>. n. 7, discussing another case in which the high court only granted a limited expansion in the scope and effect of the 11th Amendment, <u>Seminole Tribe v. Florida</u>, 517 U.S. 44 (1996).

8

### D. AS TO COUNTS II, III AND IV, THE 11TH AMENDMENT DOES NOT BAR MONETARY DAMAGES AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES.

A suit against a state official in her/his official capacity[2] is not against the state for Eleventh Amendment purposes. Ex parte Young, supra; Garrett, supra:

> The Ex parte Young doctrine allows plaintiffs to sue state officials even if they claim to be acting under valid state law because, if the officials' conduct constitutes an ongoing violation of federal law, the state "cannot cloak their actions with state authority or state immunity." Id. That is, when state officials are arguably violating federal law, "[t]he state is not the real party in interest because the state cannot `authorize' the officials to violate federal law." Id. at 610. Hence, in allegedly violating federal law, the officials are stripped of their state authority and the Eleventh Amendment will not protect them from suit.

Lewis v. New Mexico Department of Health, supra (§ 1983 claims against state officials alleging violations of federal rights under the Medicaid Act and the Constitution).

As discussed above, there are multiple constitutional interests militating against the proposed enlargement of the scope and effect of the 11th Amendment, and the high Court has shown restraint in expanding 11th Amendment immunity.[3] The Defendants have provided no compelling reason for this Court to enlarge the scope and effect of the 11th Amendment to bar the Plaintiffs' claims against them, or any basis to find that the Plaintiff's claims are "made solely

---

[2] To be clear, there is no sovereign immunity for claims against individual defendants sued in their individual capacities. Hafer v. Melo, 502 U.S. 21, 25-27, 112 S. Ct. 358, 116 L. Ed.2d 301 (1991).

[3] See Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, and "Seminole Tribe v. Florida, 517 U.S. 44 (1996), decided in the term just before Coeur d'Alene, also denied federal jurisdiction under Ex parte Young, even in the face of an alleged violation of federal law, in cases where Congress has already "prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right." Id. at 74." Elephant Butte Irrigation Dist., supra, n. 7.

for the purpose of obtaining jurisdiction" or are "wholly insubstantial and frivolous." Therefore, the Motion to Dismiss the claims in Count II, III and IV must be denied.

### E. AS TO COUNTS II, III AND IV, THE PLAINTIFF MAY SEEK MONETARY RELIEF UNDER 42 U.S.C. § 1981 FOR THE NATIONAL ORIGIN AND RACE-BASED CONSTITUTIONAL VIOLATIONS BY STATE ACTORS ALLEGED.

The Civil Rights Act of 1991 statutorily overrruled Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735, 109 S. Ct. 2702, 105 L. Ed.2d 598 (1989), by adding subsection (c) to § 1981, providing that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." "Following the passage of the 1991 Civil Rights Act, (which broadened section 1981 to include the performance of contracts in the phrase 'make and enforce contracts'), acts of intentional racial discrimination that occur during the employment process may violate section 1981. See Hicks v. IBM, 44 F. Supp.2d 593, 596 (S.D.N.Y.1999). Thus, plaintiff's claims of intentional race discrimination occurring during his employment, if properly pled, could state a cause of action." Gaynor v. Martin, 77 F. Supp.3d 272, ___ (D. Conn. 1999).

"The Civil Rights Act of 1991 creates an implied cause of action against state actors under 42 U.S.C. § 1981, and thus statutorily overrules Jett's holding that 42 U.S.C. S 1983 provides the exclusive federal remedy against municipalities for violation of the civil rights guaranteed by 42 U.S.C. S 1981." Federation of African American Contractors v. City of Oakland, 96 F.3d 1204 (9th Cir. 1996). Thus, plaintiff may appropriately assert claims under both § 1983 and § 1981." Astrada v. Howard, 979 F. Supp.2d 90 n. 2 (D. Conn. 1997), citing

10

Robinson v. Town of Colonie, 878 F. Supp. 387, 405 n. 13 (N.D.N.Y.1995) ("The Civil Rights Act of 1991 overruled, in pertinent part, Jett and added subsection (c) to § 1981..."). See also Hopp v. City of Pittsburgh, 194 F.3d 434 (3d Cir. 1999).

This is consistent with Jett, in which the high court instructs that a "precisely drawn, detailed statute preempts more general remedies." Id., 491 U.S. at 734, 109 S. Ct. at 2722. The more narrowly drawn statute on the question of whether a right of action under § 1981 may only be enforced through § 1983 is subsection (c) of that statute, and the fact that Congress enacted § 1981 separately from § 1983 without reference in either statute to the other, much less any statutory directive as to enforcement of § 1981 being available only through § 1983.

### F. AS TO COUNTS II AND IV, AGAINST THE INDIVIDUAL DEFENDANTS, TITLE VII IS NOT THE EXCLUSIVE REMEDY FOR RETALIATION FOR THE EXERCISE OF VARIOUS CIVIL RIGHTS, AND PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983 ARE COGNIZABLE.

"[I]t is clear that Congress did not intend to make Title VII the exclusive remedy for employment discrimination claims, at least not those claims cognizable under the Constitution:

> In 1972, Congress amended the 1964 Civil Rights Act to make Title VII applicable to state and municipal employers. Pub. L. No. 92-261, 86 Stat. 103 (1972). Shortly thereafter, this court expressly recognized the continuing viability of a section 1983 suit in the employment discrimination context. Vulcan Soc'y of New York City Fire Dept., Inc. v. Civil Service Comm'n, 490 F.2d 387, 390 n. 1 (2d Cir. 1973) ("The legislative history [of the 1972 amendment] made it clear, however, that Congress did not intend thereby to limit plaintiffs' rights to bring suits against state and municipal officers under 42 U.S.C. § 1983."). Moreover, every circuit that has considered this issue has held that Title VII is not the exclusive remedy for discrimination claims against state or municipal employers, where those claims derive from violations of Constitutional rights. See, e.g., Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1079 (3d Cir. 1990); Johnston v. Harris County Flood Control Dist., 869 F.2d 1565, 1573 (5th Cir. 1989), cert. denied, 493 U.S. 1019, 110 S. Ct. 718, 107 L. Ed.2d 738 (1990); Starrett v. Wadley, 876 F.2d 808, 814 (10th Cir.

1989); Roberts v. College of the Desert, 870 F.2d 1411, 1415-16 (9th Cir. 1988); Keller v. Prince George's County, 827 F.2d 952, 956-63 (4th Cir. 1987); Trigg v. Fort Wayne Community Schools, 766 F.2d 299, 302 (7th Cir. 1985); Day v. Wayne County Bd. of Auditors, 749 F.2d 1199, 1205 (6th Cir. 1984). In addition, the District of Columbia Circuit has entertained employment discrimination claims under § 1983 alone, which may be an implicit endorsement of this principle. Oates v. District of Columbia, 824 F.2d 87 (D.C. Cir. 1987).

The Fourth Circuit, in Keller, reviewed the legislative history of Title VII in as much detail as anyone would wish. Keller, 827 F.2d at 958-962, 965-66. We see no need to cover that ground again. Congress undoubtedly and repeatedly considered the exclusivity question and, in the end, resolved not to make Title VII the sole statutory remedy for employment discrimination by state and municipal employers that amounts to a constitutional tort ... See, e.g., id. at 966 (Wilkinson, J., concurring) ("House bill provided that charges under Title VII are the exclusive remedy for unlawful employment practices. The House receded.") (quoting S. Conf. Rep. No. 681, 92d Cong., 2d Sess. 17 (1972), reprinted in Legislative History of the Equal Employment Opportunity Act of 1972, at 1815 (1972)).

Annis v. County of Westchester, 36 F.3d 251, 254 (2d Cir. 2000). See also, Lauture v. IBM, supra (discussing Congressional intent).[4]

Once again, the defendants ignore current caselaw. The defendants' authority is one Second Circuit decision, Bernheim v. Litt, 79 F.3d 318 (2d Cir. 1996), with its cites to two decisions from other Circuits, which are inappositive as succeeded by Annis, which makes no distinction for retaliation as opposed to any other claims under Title VII against a state employer.

---

[4] "In 1972, the Senate rebuffed an amendment to the Equal Employment Opportunity Act (EEOA) that would have limited remedies for workplace discrimination to Title VII and the Equal Pay Act, 29 U.S.C. § 201 et seq. See Runyon, 427 U.S. at 174 n.11 (discussing Senate debate). As the sponsor of the EEOA explained, "'the courts have specifically held that [T]itle VII and the Civil Rights Acts of 1866 and 1871 are not mutually exclusive, and must be read together to provide alternative means to redress individual grievances.'" Id."

Moreover, the decisions cited by the defendants do not mandate that all claims of retaliation for the exercise of anti-discrimination/equal protection guarantees be brought under Title VII, but rather, hold that there is no claim for "general" or "generic" retaliation relative to the Equal Protection Clause. Yet, retaliation claims are cognizable under 42 U.S.C. § 1983 relative to the exercise of First Amendment rights, chiefly, in reporting or complaining about unlawful discrimination in the public employment context:

> Watkins asserts that two elements of her "prima facie case of retaliation under the Equal Protection Clause" are that she "engaged in protected conduct or statements," and that her "termination was based, at least in part, on her membership in a protected classification." To the extent Watkins contends that she was dismissed because of her expressive activity, that claim arises under the First Amendment. See, e.g., Thompson v. City of Starkville, 901 F.2d 456, 468 (5th Cir.1990) (dismissing plaintiff's equal protection claim in retaliation case because it "amounts to no more than a restatement of his first amendment claim"); Vukadinovich v. Bartels, 853 F.2d 1387, 1391-92 (7th Cir.1988) (finding that plaintiff's equal protection retaliation claim, based on allegation that "he was treated differently because he exercised his right to free speech," "is best characterized as a mere rewording of [his] First Amendment-retaliation claim"). Moreover, to the extent Watkins links her alleged retaliatory dismissal to her gender or race, that allegation constitutes part of her equal protection discrimination (i.e., hostile work environment sexual and racial harassment) claim. See, e.g., Beardsley v. Webb, 30 F.3d 524, 529-30 (4th Cir.1994). A pure or generic retaliation claim, however, simply does not implicate the Equal Protection Clause. See Ratliff v. DeKalb County, 62 F.3d 338, 340 (11th Cir.1995) (reversing denial of qualified immunity on equal protection retaliation claim because "[t]he right to be free from retaliation [for making complaints of discrimination] is clearly established as a first amendment right and as a statutory right under Title VII; but no clearly established right exists under the equal protection clause to be free from retaliation"); Grossbaum v. Indianapolis-Marion County Bldg. Auth., 100 F.3d 1287, 1296 n. 8 (7th Cir.1996) (Equal Protection Clause "does not establish a general right to be free from retaliation"); Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir.1996) ("[W]e know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination.").

Watkins v. Bowden, 105 F.3d 1344, 1354 (11th Cir. 1997).

In the instant case, Plaintiff does not plead a "general" or "generic" retaliation claim under the Equal Protection Clause; he pleads that the retaliation was based on national origin and race. There appears no rationale why these authorities recognize a claim under the First Amendment for retaliation for complaining of unlawful race discrimination, but not for retaliation for race and national origin-based deprivations of the Equal Protection Clause.[5] The cases rely on Bernheim, which only declined to recognize the cause in that case because it appeared that no other authority had already done so. Clearly, recognition of retaliation claims under the First Amendment evolved. No cogent reason having been cited for them not to be allowed under the Equal Protection Clause, Plaintiff asks this Court to provide a consistent framework for the scope of these two constitutional rights of public employees.

---

[5] Plaintiff will be seeking leave to file another Amended Complaint to allege violation of his First Amendment rights.

14

## III.  CONCLUSION

Accepting all well-pleaded allegations as true and drawing all reasonable inferences in favor of the Plaintiff, no claims in the Amended Complaint should be dismissed at this preliminary pleading stage.

FOR THE PLAINTIFF,

Dated 10/30/03

Susan V. Wallace, Esq.
11 Blue Orchard Drive
Middletown, Connecticut 06457
Tel: (860) 704-0472  Fax: -0490
law4us@rcn.com
Fed Bar No. CT08134

**CERTIFICATION OF SERVICE**

The undersigned counsel certifies that a copy of the foregoing "Plaintiff's Memorandum in Support of Opposition to Motion to Dismiss" has been served upon:

Joseph A. Jordano, AAG
State of Connecticut, Office of the Attorney General
55 Elm Street
P.O. Box 120
New Haven, CT 06141-0120

on this _30_ day of October 2003, via

    _✓_    Regular U.S. Mail, first class, postage prepaid

    ____    U.S. Priority Mail

    ____    U.S. Express Mail or other overnight mail service

    ____    Facsimile

    ____    Hand-delivery

_/s/ Susan V. Wallace_
Susan V. Wallace, Esq.