# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RICHARD A. GORDON,    :
    Plaintiff,    :
        :
        :
V.    :    CASE NO. 3:01 CV 1656 (MRK)
        :
        :
COMMISSION ON HUMAN    :
RIGHTS AND OPPORTUNITIES,    :
CYNTHIA WATTS ELDER, in    :
her official capacity and personally,    :
DONALD NEWTON, in his official    :
capacity and personally, PAMELA    :
LIBBY in her official capacity and    :
Personally,    :
    Defendants,    :    AUGUST 23, 2004



### THIRD AMENDED COMPLAINT

1.    This is an action for damages and other equitable relief arising under § 706 of Title VII of the Civil Rights Act of 1964, Title 42 United States Code § 2000e, et seq., as amended by the Civil Rights Act of 1991; Title 42 United States Code §§ 1981, 1983, 1985(3), 1986, 1988; the Connecticut Constitution; Connecticut General Statutes § 46a-60, et seq., and the common law of the State of Connecticut.

2.    The acts complained of were committed within the State of Connecticut, and at all relevant times, Plaintiff was a citizen of the United States and a resident of the Town of Bloomfield, Connecticut.

3.    This Court has jurisdiction of this controversy by virtue of 42 U.S.C. § 2000e-5 and this Court's powers and authority to hear pendent state law claims. Venue in this district is appropriate to 28 U.S.C. §§ 12391(b) and 1392(a).

## COMPLIANCE WITH ADMINISTRATIVE PROCEDURE

4.      Plaintiff timely filed Charges of unlawful discrimination in employment against the defendant CONNECTICUT COMMISSION ON HUMAN RIGHTS AND RESPONSIBILITIES ("CHRO") with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the U.S. Equal Employment Opportunity Commission ("EEOC").  CHRO released jurisdiction and EEOC issued a Dismissal and Notice of Rights upon a "no reasonable cause" finding dated May 30, 2001, copy appended hereto as Exhibit A.

### PARTIES

5.      At all times relevant herein, defendant CONNECTICUT COMMISSION ON HUMAN RIGHTS AND RESPONSIBILITIES ("CHRO") has been duly constituted agent or agency of the State of Connecticut.  CHRO's mission statement proclaims that its mission "is to eliminate discrimination through civil and human rights law enforcement and to establish equal opportunity and justice for all persons within the state through advocacy and education," and that "[i]t is the statutory responsibility of the Commission to:  Enforce human rights laws to end illegal discrimination in employment . . . "

6.      At all times relevant herein, defendant CYNTHIA WATTS ELDER was employed by CHRO as its Executive director with supervisory authority over all subordinate

- 2 -

ranking employees thereof, including the Plaintiff and the defendant DONALD NEWTON, and is sued in her personal capacity and in her official capacity acting within the scope of her authority and in the course of her employment and duties under color of state law.

7.    At all times relevant herein, defendant DONALD NEWTON was employed by CHRO as its Chief of Field Operations, with supervisory authority over subordinate ranking employees including the Plaintiff.  He is sued in his personal capacity and in his official capacity acting within the scope of his authority and in the course of his employment and duties under color of state law.

8.    At all times relevant herein, defendant PAMELA LIBBY was employed by the State of Connecticut in its Department of Administrative Services as a Director of Personnel Assessment and Staffing for State agencies including CHR, with supervisory authority over subordinate ranking employees.  She is sued in her personal capacity and in her official capacity acting within the scope of her authority and in the course of her employment and duties under color of state law.

9.    Plaintiff RICHARD C. GORDON is a Black man, of dark color, of Jamaican national origin and citizenry, and a naturalized citizen of the United States.

- 3 -

## FACTS

10.    At all times relevant herein, defendant CHRO acted through its employees, officials, agents, and representatives.

11.    At all times relevant herein, the individual defendants have had authority to promulgate and enforce policies, practices or customs for CHRO.

12.    At all times relevant herein, the individual defendants each knew or should reasonably have known of the misconduct, tortuous and unlawful acts alleged herein.

13.    From on or about June 13, 1996, until his involuntary termination on or about March 2001, was employed by defendant CHRO.

14.    In March 1999, defendant CYNTHIA WATTS ELDER was appointed Executive Director of CHRO, with a supervisory authority over Plaintiff and defendant DONALD NEWTON.

15.    Upon taking office as Executive Director of CHRO, defendant CYNTHIA WATTS ELDER made a public statement that her predecessor in her position the CHRO's Executive Director had "improperly hired a bunch of unqualified minorities at CHRO."

16.    On March 30, 1999, Plaintiff's supervisor at the time, one Femi-Bogle Assegai (not a party herein), who is a Black person of Jamaican national origin, who was then the Manager of CHRO's West Central Regional Office, recommended that CHRO retain

- 4 -

Plaintiff as a part-time Law Clerk while he attended law school, and thereafter CHRO did so retain Plaintiff.

17.    In May 1999, Plaintiff graduated from law school earning a Juris Doctorate degree.

18.    On or about June 18, 1999, CHRO hired or promoted Plaintiff to a "durational" position of Assistant Commission Counsel I ("ACC I") in its West Central Regional Office in Waterbury.

19.    In about September 1999, in a staff meeting in the Waterbury CHRO office, defendant CYNTHIA WATTS ELDER promised durational employees of that office, including Plaintiff, that their positions would be made permanent shortly.

20.    Meanwhile, CHRO, acting through CYNTHYIA WATTS ELDER and DR. PAMELA LIBBY, hired White and American-born women who were lesser qualified than Plaintiff on a permanent basis as ACC I's and as Human Rights and Opportunities Representatives, positions with substantially the same duties Plaintiff performed as a durational ACC I.

21.    At all relevant times herein, Plaintiff was told that ACC I positions in CHRO required a Juris Doctorate degree, but the defendants allowed at least one White American-

born woman who failed to obtain a license to practice law in Connecticut within one year of her hire to hold an ACC I position.

22.     In the fall of 2000, CHRO, acting through CYNTHIA WATTS ELDER and DR. PAMELA LIBBY, advertised a permanent full-time position in its Waterbury office of Affirmative Action Manager at an annual salary of approximately $70,000.00. Approximately ten attorneys then employed by CHRO, many persons of color or other protected classes, applied for the position. CHRO, acting through CYNTHIA WATTS ELDER and DR. PAMELA LIBBY, then re-advertised the position as part-time at an annual salary of approximately $35,000.00, then filled it with the single applicant, a White American-born woman who did not have a law degree or license to practice law.

23.     On or about December 1999, Plaintiff received notification from the State of New Jersey Bar Examiners that he had successfully passed that state's bar examination, and his superiors at CHRO were informed that he passed the New Jersey Bar.

24.     In February 2000, Plaintiff took the Connecticut Bar examination.

25.     On or about March 21, 2000, Plaintiff applied for a permanent position of Assistant Commission Counsel I ("ACC I"), with CHRO. Plaintiff's superior at that time, one Femi-Bogle Assegai (not a party herein), who is a Black person of Jamaican national origin, who was then the Manger of CHRO's West Central Regional Office in Waterbury,

- 6 -

recommended that CHRO promote Plaintiff to the permanent ACC I position in the Waterbury office. On or about May 1999 Plaintiff was hired as durational assistant commission counsel.

26.    In early 2000, the defendants directed Plaintiff and other persons holding ACC I positions to complete a SCOPE (State Coalition on Pay Equity) review of their job functions.

27.    The defendants' motives in pursuing a review of all ACC I positions in CHRO were to create justification to deny advancement in CHRO to non-Whites, men, and persons of other than American national origin, including Plaintiff, who were eligible to serve as Commission Counsel, by keeping them in the lower pay and status Representative jobs, which did not "officially" require a law degree.

28.    Plaintiff protested the advancement of lesser qualified persons to permanent ACC I and Representative positions while he was kept durational, and spoke of filing a labor union grievance over it.

29.    In response to Plaintiff's protests, defendant CYNTHIA WATTS ELDER sent him a letter dated April 13, 2000, stating that CHRO was in the process of making all durational positions at CHRO permanent and that Plaintiff would be notified when this process was completed. CYNTHIA WATTS ELDER made statements to Plaintiff to induce

- 7 -

him to forebear initiating a labor union grievance or other charge of wrongdoing, and to induce him to remain in his durational position where he enjoyed less job security than a permanent employee.

30.    At approximately 4:15 p.m. on Friday, April 28, 2000, Plaintiff learned that he successfully passed the Connecticut Bar examination, and his superiors at CHRO were informed that he passed the Connecticut Bar.

31.    At approximately 4:15 p.m. on Friday, April 28, 2000, defendant DONALD NEWTON telephoned CHRO's Waterbury Office and directed Plaintiff to apply for a Human Rights and Opportunities Representative position that was then vacant in that office, at substantially lower compensation and status than Plaintiff's position of ACC I.

32.    At approximately 4:47 p.m. on Friday, April 28, 2000, defendant DONALD NEWTON informed Plaintiff that he would have an application for the Representative position sent to Plaintiff.

33.    On May 2, 2000, defendant DONALD NEWTON appeared in person at the Waterbury CHRO office where Plaintiff worked and told Plaintiff to submit an application for the Representative position.

34.    DONALD NEWTON told Plaintiff that he needed to apply for the Representative position because his ACC I was only durational and was red-lined for

- 8 -

elimination. Plaintiff understood this to mean that his superior was informing him that his ACC I position was in imminent jeopardy of termination and that the only way to preserve his employment at CHRO was to apply for another vacant position.

35.    At approximately 4:50 p.m. on April 28, 2999, by direction of defendant DONALD NEWTON, Plaintiff was furnished an application for the Representative position. Unknown to Plaintiff, the application was missing four necessary pages.

36.    The closing date for the application to be submitted for consideration for the Representative position was May 3, 2000.

37.    A properly completed application was a requirement for consideration for the Representative position that defendant DONALD NEWTON directed Plaintiff to apply for.

38.    On May 2, 2000, relying on what DONALD NEWTON had told him about his ACC I position being in jeopardy, Plaintiff submitted the job application for the HRO Representative position that was furnished to him, but, unknown to Plaintiff, without four necessary pages.

39.    The defendant CHRHO, acting through its employees, officials, agents, and representatives, including defendant DR. PAMELA LIBBY, rejected Plaintiff's application for the Representative position for the stated reason that it was "incomplete."

40. By letter to defendant DR. PAMELA LIBBY dated June 9, 2000, Plaintiff requested a reconsideration or appeal of the rejection of his application for the Representative position.

41. Effective June 16, 2000, CHRO, acting through its employees, officials, agents, and representatives, including the individual defendants herein, demoted Plaintiff to a Human Rights and Opportunities ("HRO") Trainee position, at substantially lower compensation and status than Plaintiff's position of ACC I. Relying on what DONALD NEWTON had told him about his ACC I position being in jeopardy, Plaintiff took the position.

42. On June 28, 2000, CHRO informed Plaintiff that his pay had been retroactively reduced to that of a Trainee back to June 16, 2001 despite the fact that he had worked from June 16 through June 28, 2003, as an Assistant Commission Counsel I.

43. In a letter dated June 19, 2000, defendant DR. PAMELA LIBBY informed Plaintiff that his request for reconsideration or appeal of the rejection of his application for the Representative position had been denied.

44. CHRO has afforded the right of reconsideration or appeal of personnel hiring decisions to similarly situated Whites and American-born persons and females, including allowing those who submitted incomplete applications to correct or complete their errors

- 10 -

after a closing date for the application, and DR. PAMELA LIBBY and CYNTHIA WATTS ELDER knew or should reasonably have known that. The defendants intentionally excluded Plaintiff from the pool of candidates for the Trainee job, based on his race, national origin, and sex, and in retaliation for his having spoken of pursuing a labor union grievance.

45.     The defendants have allowed SUSAN HAUN, a female, to retain the higher compensation of an ACC I after she was transferred to the Waterbury Office of the defendant CHRO.

46.     On July 7, 2000, Plaintiff initiated a labor union grievance against CHRO over his demotion to Trainee and reduction in compensation.

47.     As of August 2000, CHRO had four permanent HRO Trainee positions, into all four of which lower level positions the defendants placed non-Whites, three of the four being males of other than American national origin.

48.     On or about September 5, 2000, Plaintiff filed a Charge of Discrimination with CHRO and EEOC, against CHRO.

49.     On September 18, 2000, Plaintiff was sworn in as an attorney-at-law in the State of New Jersey Bar.

- 11 -

50.    In about December 2000, CHRO, acting through its employees, officials, agents, and representatives, including the individual defendants herein, hired a White American-born woman as a Human Rights and Opportunities Representative.

51.    When defendants CYNTHIA WATTS ELDER and DONALD NEWTON made statements to Plaintiff about securing him permanent employment at CHRO, they did not intend to do so, or knew or should reasonably have known that they lacked the ability to do so.

52.    In March 2001, the defendants constructively discharged Plaintiff from his employment with CHRO.

53.    On or about May 1, 2001, defendant DONALD NEWTON filed a complaint with the Statewide Grievance Committee for the Connecticut Bar, claiming that Plaintiff committed the unauthorized practice of law in Connecticut, which is a crime under Connecticut law, by having acknowledged a settlement agreement, on December 10, 2000, of a Charge of Discrimination filed with CHRO by an unrelated third person.

54.    DONALD NEWTON published such statements when he knew or should reasonably have known that they were misleading, false, and defamatory, and has not retracted them despite due demand for retraction.

- 12 -

55.    In fact, Plaintiff signed the acknowledgement on behalf of CHRO with his New Jersey Bar license number, intending to convey his status as an attorney pursuant to his New Jersey Bar license.

56.    DONALD NEWTON published and continues to publish said misleading, false and defamatory statements about Plaintiff with the intent to deprive Plaintiff of employment and advancement within CHRO, and to prevent Plaintiff from obtaining admission to the Connecticut Bar, and to retaliate against Plaintiff for filing a labor grievance and Charges of Discrimination in employment, and the instant lawsuit.

57.    During her tenure as Executive Director of the CHRO, defendant CYNTHIA WATTS ELDER engaged in a campaign to remove members of protected classes, whom she termed "unqualified minorities," from employment and advancement at CHRO.

58.    Defendant CYNTHIA WATTS ELDER's public statements that Plaintiff, as a member of the group of racial minority persons hired by her predecessor, was not qualified to work at CHRO, and she published such statements when she knew or should reasonably have known that they were misleading, false and defamatory, and has not retracted them despite due demand for retraction.

59.    Defendant CYNTHIA WATTS ELDER published and continues to publish misleading, false and defamatory statements about Plaintiff, and allowed her subordinate

- 13 -

employee DONALD NEWTON to publish the misleading, false and defamatory statements about Plaintiff alleged herein as part of said campaign to remove Blacks and persons of color from employment and advancement within CHRO, with the intent to deprive Plaintiff of employment and advancement within CHRO, and to prevent Plaintiff from obtaining admission to the Connecticut Bar, and to retaliate against Plaintiff for filing a labor grievance, Charges of discrimination in employment, and the instant lawsuit.

60.     As part of said campaign to remove Blacks and persons of color from employment and advancement at CHRO, defendant CYNTHIA WATTS ELDER took adverse employment actions against, and terminated the employment of a number of such persons who were employed by CHRO under her predecessor Executive Director, who was a Black man, including Plaintiff, the director's top deputies Jewel E. Brown (not a party herein), who is Black, and Valeria Caldwell-Gaines (not a party herein), who is Black, Leonyer Richardson (not a party herein), who is Black, and Regional Manager Femi Bogle-Assegai (not a party herein), who is Black and of Jamaican national origin. Femi Bogle-Assegai was involuntarily terminated upon an accusation that she stole state services or funds, which she maintains is false and a pretext for unlawful discrimination.

61.     At least four former CHRO employees in addition to Plaintiff who are Black or of color filed lawsuits in the United States District Court for Connecticut alleging that they

- 14 -

were the victims of unlawful discrimination in their employment by the STATE and its CHRO on the basis of race, color, and/or national origin to wit, <u>Valeria Caldwell-Gaines v. CHRO</u>, No. 3:00CV1880(JBA); <u>Jewel E. Brown v. CHRO</u>, No. 3:02CV223(CFD); <u>Leonyer Richardson v.</u> CHRO, No. 3:02CV625(AVC); and <u>Femi Bogle-Assegai v. CHRO</u>, No. 3:02CV2291(JCH).

## COUNT ONE, AGAINST CHRO:  PURSUANT TO TITLE 42 U.S.C. §§ 2000, ET SEQ., AS AMENDED

Paragraphs 1 through 61, inclusive, are incorporated as if fully set forth herein.

62.     At all times relevant herein, defendant CHRO has been employers for purposes of 42 U.S.C. §§ 2000 <u>et seq.</u>, each having 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

63.     CHRO, its employees, officials, agents, and representatives, violated or interfered with rights secured to the Plaintiff by Title VII, 421 U.S.C. <u>et seq.</u>, as amended by the Civil Rights Act of 1991, by a pattern and practice of disparate treatment of Plaintiff in the terms, conditions and privileges of employment on the basis of his race, national origin and sex, in one or more of the followings ways:

a.      Selectively enforcing rules and requirements for employee conduct against Plaintiff and other Blacks and persons of other than American national origin;

b.      Selectively enforcing requirements for employment and for advancement

- 15 -

as an ACC I and a Representative, and for appeal rights for the denial of his application for the permanent Representative position, against Plaintiff;

c.      Providing Plaintiff with a defective application form for a job for which the was otherwise qualified, and denying him the position based on his submission of the defective application form;

d.      Denying Plaintiff and other Blacks and persons of other than American national origin employment and advancement for positions for which he was otherwise qualified;

e.      Making false or misleading representations to Plaintiff about his ACC I position being made permanent, or being eliminated;

f.      Demoting Plaintiff;

g.      Terminating Plaintiff's employment;

h.      Publishing false and defamatory statements about Plaintiff;

i.      Filing a retaliatory Bar grievance against Plaintiff;

j.      Creating and maintaining a workplace environment at CHRO hostile to Blacks and persons of other than American national origin;

- 16 -

k.      Not promulgating, maintaining and enforcing policies, practices or customs of hiring and advancing employees and applicants for employment at CHRO who are Black or of other than American national origin on an equal basis with White and American-born female employees and applicants for employment with CHRO;

l.      Not adequately training employees, officials, agents, and representatives of CHRO with regard to the right to equal employment opportunities of employees and applicants for employment with CHRO;

m.      Not adequately supervising employees, officials, agents, and representatives of CHRO with regard to the right to equal employment opportunities of employees and applicants for employment with CHRO;

n.      Not adequately disciplining employees, officials, agents, and representatives of CHRO for violating the right to equal employment opportunities of employees and applicants for employment with CHRO;

o.      Not promulgating, maintaining and enforcing adequate, meaningful and effective policies and procedures for employees and applicants for employment with CHRO to complain of violations of their rights to equal employment

- 17 -

opportunities and for investigation and discipline in the event of such complaints; and

p.      Maintaining policies, practices and customs that violate the rights to equal employment opportunities of employees and applicants for employment with CHRO who attempt to protect such rights.

64.    CHRO, its employees, officials, agents, and representatives, violated or interfered with rights secured to the Plaintiff by Title VII, 42 U.S.C. §§ 2000 et seq., as amended by the Civil Rights Act of 1991, by policies, practices and procedures having a disparate impact upon persons other than White and American-born women, in one or more of the following ways:

a.      Not maintaining and enforcing adequate, meaningful and effective policies and procedures for employees to complaint of unlawful discrimination, harassment and retaliation, and for investigation and discipline of perpetrators in response to such complaints;

b.      Selectively enforcing requirements for employment and conduct.

65.    International discrimination was a substantial motivating factor in the defendants' adverse employment actions toward Plaintiff.

- 18 -

66.     As a direct and proximate result of said unlawful discrimination, harassment and retaliation, Plaintiff suffered and continues to suffer the loss of pay, benefits and retirement credits.

67.     As a direct and proximate result of said unlawful discrimination, harassment and retaliation, Plaintiff incurred costs to obtain comparable employment.

68.     As a direct and proximate result of said unlawful discrimination, harassment and retaliation, Plaintiff's career was impeded and impaired.

69.     As a direct and proximate result of said unlawful discrimination, harassment and retaliation, Plaintiff's personal and professional reputations and relations with co-workers and peers have been irreparably harmed.

70.     As a direct and proximate result of said unlawful discrimination, harassment and retaliation, Plaintiff suffered and continues to suffer stress and mental/emotional distress.

71.     As a direct and proximate result of said unlawful discrimination, harassment and retaliation, Plaintiff must incur substantial costs and attorney's fees to seek appropriate redress.

**COUNT TWO, AGAINST CYNTHIA WATTS ELDER AND DONALD NEWTON: PURSUANT TO TITLE 42 U.S.C. § 1981, 1983, 1988**

1-61.   Paragraphs 1 through 61, inclusive, are incorporated as if fully set froth herein.

62.    At all relevant times herein, Plaintiff had the following clearly established federal rights:

        a.    The right to Free Speech and to petition for redress from the government, to wit, by utilizing the State's appeal process for denial of his application for the Representative position, by filing a union grievance, and by filing a Charge of Discrimination, secured by the First Amendment to the U.S. Constitution;

        b.    The right to Equal Protection of the Laws mandating equal terms, conditions and privileges of public employment with White and American-born persons of both sexes, secured by the Fifth Amendment to the U.S. Constitution;

        c.    The right to Due Process of Law for deprivation of his fundamental property interest in his public employment secured by the Fourteenth Amendment; and

        d.    The rights secured by 42 U.S.C. § 1981 to be free of discrimination on the basis of race and national origin in the making, enforcement and performance of contracts, including employment applications and the employment relationship.

63.    Defendants CYNTHIA WATTS ELDER and DONALD NEWTON, each with malice or deliberate indifference, infringed Plaintiff's rights secured by the First Amendment to Free Speech and to petition for redress from the government, by one or more of the following acts or failures to act:

    a.    Selectively enforcing rules and requirements for employee conduct against Plaintiff;

    b.    Selectively enforcing requirements for employment and for advancement as an ACC I and a Representative, and for appeal rights for the denial of his application for the permanent Representative position, against Plaintiff;

    c.    Denying Plaintiff employment and advancement for positions for which he was otherwise qualified, to wit, ACC I and Representative;

    d.    Making false or misleading representations to Plaintiff about his ACC I position being made permanent, or being eliminated;

    e.    Demoting Plaintiff;

    f.    Terminating Plaintiff's employment;

    g.    Publishing false and defamatory statements about Plaintiff;

    h.    Filing a retaliatory Bar grievance against Plaintiff;

- 21 -

    i.    Not promulgating, maintaining and enforcing adequate, meaningful and effective policies and procedures for Plaintiff and other employees and applicants for employment with CHRO to complain of civil rights violations, and for investigation and discipline in the event of such complaints;

    j.    Maintaining policies, practices and customs that violate the civil rights of Plaintiff and other employees and applicants for employment with CHRO who make labor grievances and complaints of unlawful discrimination, harassment and retaliation in employment at CHRO, and

    k.    Not disciplining employees, officials, agents, and representatives of CHRO who violated Plaintiff's First Amendment rights.

64.    Defendants CYNTHIA WATTS ELDER and DONALD NEWTON, each with malice or deliberate indifference, violated Plaintiff's right to Equal Protection of Law secured by the Fifth Amendment, by the following acts or failures to act based on race, national origin or sex:

    a.    Engaging in systematic, institutionalized violations of the civil rights of employees and applicants for employment with CHRO;

    b.    Selectively enforcing rules and requirements for employee conduct against Plaintiff;

c.      Selectively enforcing requirements for employment and for advancement as an ACC I and a Representative, and for appeal rights for the denial of his application for the permanent Representative position, against Plaintiff;

d.      Providing Plaintiff was a defective application form for a job for which he was otherwise qualified, and denying him the position based on his submission of the defective application form;

e.      Making false or misleading representations to Plaintiff about his ACC I position being made permanent, or being eliminated;

f.      Denying Plaintiff employment and advancement for positions for which he was otherwise qualified;

g.      Demoting Plaintiff;

h.      Terminating Plaintiff's employment;

i.      Publishing false and defamatory statements about Plaintiff;

j.      Filing a retaliatory Bar grievance against Plaintiff;

- 23 -

k.     Not promulgating, maintaining and enforcing policies, practices or customs of hiring and advancing protected class employees and applicants on an equal basis with White and American-born female employees and applicants for employment with CHRO;

l.     Not adequately training employees, officials, agents, and representatives of CHRO with regard to the civil rights of employees and applicants for employment with CHRO;

m.     Not adequately supervising employees, officials, agents, and representatives of CHRO with regard to the civil rights of employees and applicants for employment with CHRO;

n.     Not adequately disciplining employees, officials, agents, and representatives of CHRO for violating the civil rights of employees and applicants for employment with CHRO;

o.     Not promulgating, maintaining and enforcing adequate, meaningful and effective policies and procedures for employees and applicants for employment with CHRO to complain of civil rights violations, and for investigation and discipline in the event of such complaints;

- 24 -

p.      Maintaining policies, practices and customs that violate the civil rights

of employees and applicants for employment with CHRO who make labor

grievances and complaints of unlawful discrimination, harassment and

retaliation by CHRO and its employees, officials, agents, or representatives;

and

q.      Creating and maintaining a workplace environment at CHRO hostile

to protected class members.

65.     Defendants CYNTHIA WATTS ELDER and DONALD NEWTON, each

with malice or deliberate indifference, violated Plaintiff's rights secured by the Fourteenth

Amendment by depriving him of his employment, pay, benefits, retirement credits, and

professional reputations without Due Process of Law.

66.     Defendants CYNTHIA WATTS ELDER and DONALD NEWTON, each

with malice or deliberate indifference, violated Plaintiff's rights secured by 42 U.S.C. § 1981

to be free of discrimination on the basis of race and national origin in the making,

enforcement and performance of contracts, including employment applications and the

employment relationship, by depriving him of his employment, pay, benefits, retirement

credits, and professional reputation.