UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICHARD GORDON | : CIV. NO. 3:01CV1656(MRK) |
| *Plaintiff*, | : |
| | : |
| v. | : |
| | : |
| COMMISSION ON HUMAN | : |
| RIGHTS AND OPPORTUNITIES, ET AL. | : |
| *Defendants* | : March 4, 2005 |

**DEFENDANT'S OBJECTION AND REPLY TO PLAINTIFF'S REVISED RESPONSE TO SUMMARY JUDGMENT**

On March 1, 2005, defense counsel received two documents from plaintiff's attorney entitled: "Plaintiff's Response to Defendants' claims undisputed facts and Defendants' Motion to Strike," and "Evidentiary Support for plaintiff's Rebuttal to Defendants Alleged Undisputed Facts." As with the plaintiff's response to summary judgment, these documents are confusing and do not comply with Local Rule 56(a)(3). Exactly what the plaintiff has filed is unclear. For the purpose of this objection and reply the defendants will treat the plaintiff's filings as: (a) a Revised Rule 56(a)(2) statement and (b) an unexecuted and un-sworn affidavit of Richard Gordon (hereinafter referred to as Gordon's statement). [1]

At the outset the defendants remind the court that the plaintiff's latest statement contains many of the same evidentiary defects as his earlier submission. Why the plaintiff cannot read and understand the Federal Rules regarding summary judgment which require "affidavits, deposition testimony, responses to discovery requests or other

---

[1] The plaintiff's "Response to the defendants' undisputed statement of facts. . ." references Gordon's affidavit. There is no signed affidavit identified as such. But the last page of the plaintiff "Evidentiary support for plaintiff's rebuttal . . ." contains an attestation block that is unsigned.

1

documents" (that would be <u>admissible</u> at trial) is a mystery. Not only is Gordon's statement unsigned, but it contains many assertions <u>that would not be admissible at trial</u> because it is speculation, argumentative, hearsay, or it lacks foundation. Apparently the plaintiff, despite his legal training, simply does not understand the rules of evidence. Several examples will illustrate this point.

In paragraph 13 of the "statement", Gordon makes reference to conversations that took place in 1991. Gordon was not employed by the CHRO until 1996. Not only are Louis Martin's alleged statements irrelevant and hearsay, Gordon has no personal knowledge of the conversations. He wasn't there to hear them. What he is doing is testifying to hearsay within hearsay with no foundation for the statements he asserts "as facts." If the plaintiff wants statements from Louis Martin, he needs an affidavit from him. This type of "statement" would not be admissible at trial and is not admissible to defeat summary judgment.

Similarly and more blatant is the plaintiff's response to Fact #44. The defendants' actual fact states: "Instead of just letting the plaintiff's employment expire in June 2000, Cynthia Watts Elder hired the plaintiff in a lower paying, but permanent, HRO Trainee position, that provided permanent status and the opportunity to advance to higher positions." (Facts, ¶ 44). Instead of just responding to that fact, the plaintiff's most recent response goes on for almost two pages and includes inadmissible hearsay references to Attorney Dawne Westbrook, who the plaintiff maintains, without any evidence, was permitted to continue as an ACC-1 after the one year deadline for admission to the bar. The defendants have offered evidence that Ms. Westbrook was admitted to the Connecticut bar within one year of her hiring as a permanent ACC-1. Gordon has no

2

personal knowledge of Ms. Westbrook's situation. He is simply reiterating hearsay statements that are inadmissible. If Gordon wants to contest the defendants' facts about Dawne Westbrook's admission to the bar, he NEEDS HER TESTIMONY to do so. He cannot testify to hearsay statements, especially if he is using the statement to disprove the matter asserted, namely, when Westbrook was admitted to the bar.

Yet again in paragraph 45, the plaintiff asserts that CHRO employee Paula Ross, a white female, was hired as an HRO representative despite her submission of an incomplete application. In fact, the defendants submitted evidence that in 2000, Ms. Ross was rejected for an Affirmative Action Manager position, not an HRO position. Ms. Ross passed the HRO examination in 1990. (Facts, ¶'s 107-108). But Gordon has no personal knowledge of these facts. Again, this is Gordon's hearsay testimony. In order to controvert this fact, he NEEDS ROSS'S TESTIMONY to facts, which he cannot obtain because his assertions about Ms. Ross are untrue! Gordon could not testify to such facts at trial because they lack foundation and are hearsay. The same is true about summary judgment.

In paragraph 69, the plaintiff states "Additionally, defendant DAS and **perhaps** Dr. Libby also played a part in denying the plaintiff a prospective employment at defendant CHRO in 1999.. . ." Plaintiff's reference to "perhaps" means that he doesn't know and has no evidence of this fact. More importantly, in the same paragraph the plaintiff admits that he never applied for the position that he claims he was denied.

In paragraph 50, the plaintiff asserts that unidentified DAS personnel told him that exceptions to the application requirement had been made for white females in the past. Not only is such testimony hearsay, it is also lacking in foundation. For such

3

testimony to be admissible against DAS, whoever allegedly made the comments that the plaintiff reports must be in a high enough management level for the comments to be imputed to the defendants. There is no such foundation.

These are but a few of the instances throughout the plaintiff's amended statement in which he engages in argument and speculation, or in which he testifies to hearsay statements without foundation. The court must scrutinize his revised statement and strike those portions which are not supported by admissible evidence.

### PLAINTIFF'S STATEMENT DOES NOT PROVE A PRIMA FACIE CASE OR A PRETEXT FOR DISCRIMINATION

Nothing in the plaintiff's revised submission changes the result in this case, namely, that summary judgment must be granted because he cannot prove a prima facie case. Gordon mistakenly believes that if he simply tells his version of events, no matter how far-fetched or speculative, he can ignore the prima facie requirements for each cause of action.

For instance, in paragraphs 37-39 and 44 of his revised statement, the plaintiff claims that CHRO employee Susie Carlson faxed an incomplete application for the HRO representative examination to him in April 2000, which caused him to submit an incomplete examination application to DAS. That incomplete application was the basis for his rejection for the HRO examination. Even if Ms. Carlson had made a mistake in this gratuitous gesture of trying to help the plaintiff apply for the HRO position (which she denies), this still does not prove racial discrimination.

Similarly, in paragraph 82, Gordon insists that former Bar Examining Committee employee Shaddy Kessing entered the CHRO building on February 15, 2000 in order to

4

"gather information about a frivolous bar grievance." Notwithstanding that the bar grievance filed by the "BAR EXAMINING COMMITTEE" was not frivolous given Gordon's admission to the unauthorized practice of law (Facts, ¶¶ 85, 97) and his submission of a check to the State Comptroller for $100 to pay for the cost of unauthorized postage (Facts, ¶ 98), Gordon has **absolutely no evidence** that Shaddy Kessing ever actually met with Donald Newton. Again, this is Gordon's specious speculation. Assuming that Gordon's testimony controverts the fact about whether Shaddy Kessing ever went into the building at 21 Grand Street, this alone does not prove anything. Gordon has NOT, and CANNOT, prove any wrongdoing on Donald Newton's part. Everything Mr. Newton did was in good faith pursuant to Gordon's release, and Gordon should be sanctioned.

In paragraph 69, Gordon asserts he did not apply for a position that was originally posted as a part-time position, only to learn later that the position was upgraded to full time. This is irrelevant. He has no evidence that Cynthia Watts Elder decided to upgrade the position after it was filled in order to discriminate against him. Gordon has no idea how many white CHRO employees might have considered applying for the position if it had originally been posted as full time. Gordon's conjecture about how many other African American employees did not apply is pure speculation. How can Gordon think that he can testify as to what other people thought? He can't! Furthermore, Gordon has no evidence that he would have been hired for this position. His claim is based solely upon his self aggrandizing beliefs about his work experience.

Gordon's explanation about why he accepted a position in New Jersey and announced his resignation in March 2001, only to then apply in April for 12 weeks of

unpaid FMLA (through July when he knew he would not be at the CHRO) is ridiculous in light of Gordon's assertion that he was grievously damaged by his "alleged" demotion.

      Gordon carries the burden of adducing sufficient evidence to prove a prima facie case sufficient for a reasonable jury to find for him at trial. Gordon actually has no evidence, just his speculation and suspicions. Gordon cannot prove that the decision by DAS to conduct a SCOPE study was based in anyway upon his race or gender, let alone that it had anything to do with him personally. Gordon was a durational employee who had no legal right to a permanent job at the CHRO. Furthermore, Gordon was not entitled to help in applying for the HRO position. Except for Gordon's inadmissible speculation, he has no evidence that his rejection for the HRO Representative examination was motivated by his race or gender. He messed up the application and decided that rather than admit to his own carelessness, he should blame someone else and allege race discrimination to boot. Gordon is no stranger to carelessness. He notarized his own signature at least twice without checking the state statute and blamed that improper action on someone else. He also sent in materials to the Bar Examining Committee using the CHRO postage meter without permission. In a tantamount sign of arrogance, he claims that his misuse of state property actually benefited the CHRO!

      The truth is that Gordon voluntary resigned a permanent position for a higher paying job in New Jersey. After Gordon left the CHRO, he back-dated his letter of resignation that does not even make a single reference to discrimination or retaliation.

**GORDON SHOULD BE SANCTIONED**

Gordon has absolutely no evidence to support any claim against Donald Newton. The information Newton shared with the Bar Examining Committee of was true based on Gordon's own admission. Gordon admitted to violating the UPL law. The Defendants submit that there is not even one piece of admissible evidence to support Gordon's claim that Newton conspired to keep him out of the Connecticut bar or that Newton defamed him. Gordon has no evidence that Don Newton acted in bad faith. His act of suing Newton after Gordon executed a full release (which the CT Bar Examining Committee provided to Newton) requires sanctions to dissuade Gordon and others in the future from such conduct.

**CONCLUSION**

The court should strike the plaintiff's revised submission and grant the defendants' motion for summary judgment and sanctions.

DEFENDANTS,

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____

Joseph A. Jordano
Assistant Attorney General
Federal Bar # ct21487
55 Elm Street, P.O. Box 120
Hartford, CT 06141-0120
Tel: 860-808-5340
Fax: 860-808-5383
E-mail:
Joseph.Jordano@po.state.ct.us

## CERTIFICATION

I hereby certify that pursuant to §5(b) of the Federal Rules of Civil Procedure, a copy of the foregoing was sent via first class mail, postage prepaid, this 4th day of March, 2005, to:

Igor I. Sikorsky, Jr., Esq.
P.O. Box 38
Unionville, CT 06085

_____
Joseph A. Jordano
Assistant Attorney General